COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, Malveaux and Senior Judge Frank

UNPUBLISHED

MATTHEW HARRIS

MEMORANDUM OPINION[*]

v.      Record No. 0494-21-1                        PER CURIAM
                                                  SEPTEMBER 14, 2021

SUFFOLK DEPARTMENT OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
Lawson Wayne Farmer, Judge

(Brandon L. Wilder; Bush & Taylor, P.C., on brief), for appellant.

(William E. Hutchings, Jr., City Attorney; Karla D. Carter, Deputy
City Attorney; Stephanie J. Pough, Assistant City Attorney; Hetal
Challa, Guardian *ad litem* for the minor child, on brief), for appellee.


Matthew Harris (father) appeals the circuit court's order terminating his parental rights.

Father argues that the circuit court erred in finding that the evidence was sufficient to support a

termination of his parental rights under Code § 16.1-283(B), (C)(1), and (C)(2). Upon reviewing

the record and briefs of the parties, we conclude that this appeal is without merit. Accordingly,

we summarily affirm the decision of the circuit court. See Rule 5A:27.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." Yafi v. Stafford Dep't of Soc. Servs., 69 Va. App. 539, 550-51 (2018) (quoting Thach v. Arlington Cnty. Dep't of Hum. Servs., 63 Va. App. 157, 168 (2014)).

Father and Amy Amedeo (mother) are the biological parents to S.H., who is the subject of this appeal. In February 2018, the family, along with S.H.'s younger brother, L.H., lived in Austin, Texas. In February and March 2018, the Austin Child Protective Services (Austin CPS) became involved with the family after receiving two reports of inadequate supervision and alcohol use by the parents. The family left Texas in the middle of Austin CPS's investigation and moved to Virginia to live with the paternal grandfather.

On May 10, 2018, the Suffolk Department of Social Services (the Department) received a report that three-year-old L.H. had been found unresponsive in the family's backyard pool and died. Father was at work when the incident occurred. Considering Austin CPS's investigations and L.H.'s death, the Department removed then-four-year-old S.H. from the home and placed him in foster care. The City of Suffolk Juvenile and Domestic Relations District Court (the JDR court) entered emergency and preliminary removal orders. The JDR court subsequently adjudicated that S.H. was an abused or neglected child and entered a dispositional order.

The Department recommended numerous services for father, including grief counseling, individual/family counseling, parenting classes, a psychological evaluation, parenting capacity

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

evaluation, and substance abuse assessment. The Department directed father to comply with all service recommendations, including random drug screenings. The Department further recommended that father obtain and maintain safe housing and employment.

On December 3, 2018, father purchased a home and moved out of the paternal grandfather's home. In addition, father provided the Department with a copy of a paystub to demonstrate his employment status and income.

Furthermore, father complied with the random drug screens. On October 31, 2018, the results were negative for alcohol but positive for amphetamines and benzodiazepines, for which father had a prescription. Despite these results, father was hospitalized twice "as a result of alcohol" while S.H. was in foster care and missed visitations with S.H.

Father completed intake for services at Western Tidewater Community Services Board (WTCSB). Father told the counselor that he did not think therapy was necessary. Shortly thereafter, father reported to the Department that he had completed therapy and was "discharged."

In February 2019, the Department asked father to produce documentation for any completed services, and in December 2019, it received a letter from WTCSB confirming that father had completed parenting classes. Despite being court-ordered to attend Alcoholics Anonymous meetings, father did not provide the Department with the requested documentation showing his attendance. Father did not complete the parenting capacity evaluation and missed several appointments with S.H.'s therapists.

The Department also offered weekly supervised visitation to the family. Although father initially attended visitation on a regular basis, father's visits became more sporadic after March 2019. Father visited with S.H. on August 6, 2019; but subsequently, missed five consecutive visits. When father missed the visitations, S.H.'s behavior deteriorated, and he had tantrums,

- 3 -

nightmares, or problems in school.  The Department contacted father about the missed visits.  On October 23, 2019, father arrived at the Department's office for a visit, but no visit was scheduled.  Father appeared "disheveled" and had a "heavy odor of alcohol about his person."  The Department scheduled an appointment "for the next family visitation" and asked father to arrive before the visit so that the service team could establish "ground rules" and discuss with him the importance of maintaining consistency.  Father did not appear for the meeting or visitation.

On November 19, 2019, the Department petitioned to terminate father's parental rights because he had not complied with the required services.  On June 10, 2020, the JDR court terminated father's parental rights to S.H.[2]  Father appealed the JDR court's ruling to the circuit court.

On September 30, 2020, the parties appeared before the circuit court.  The Department explained that father had "only been compliant with visitation" in the beginning and had "never really been compliant with the services aspect."  The Department had offered to make referrals for the psychological evaluation, parenting capacity evaluation, and parenting classes, but father indicated that he wanted to choose his own providers.  Father did not make any "forward movement" throughout the case, and he never completed the parenting capacity assessment, the psychological evaluation, or grief counseling.  The Department confirmed that father's last visit with S.H. was on August 6, 2019.

The Department presented evidence that after S.H. entered foster care, he participated in therapy, and at the time of the circuit court hearing, S.H.'s behavior had improved.  The social worker testified that S.H. was "doing really well" in his foster home and at school.  S.H. had developed a "loving relationship" with the foster parents, who were interested in adopting him.

---

[2] The JDR court previously had approved the foster care goal of adoption.  Father did not appeal that ruling.

Father testified that he missed S.H. and would "give anything" to be with him again. Father detailed his compliance with the Department's requirements, including attending parenting classes and maintaining a job and home. Father stated that he had participated in substance abuse counseling at WTCSB and attended "nearly a hundred" Alcoholics Anonymous meetings before the start of the COVID-19 pandemic. Father claimed that he started the psychological and parenting capacity evaluations "over a year ago" but was unable to complete them because of the COVID-19 pandemic. Father admitted that in the beginning, he regularly attended the weekly visitations with S.H. Upon the one-year anniversary of L.H.'s death, however, father missed some visits with S.H. because he had "a lot of depression" and "the process wasn't going the way [he] thought it would." Father believed that the Department had stopped the visits after August 2019, but claimed to have asked the guardian *ad litem*, not the Department, for updates on S.H. Father further explained that he had missed some visits because of "some diabetes issues" and his "recovery" from alcohol. On cross-examination, however, father admitted that he last consumed alcohol on August 6, 2020, when he was charged with domestic assault.

The guardian *ad litem* presented evidence that between May and August 2020, the police investigated a report that methamphetamine was "being made" at the paternal grandfather's house. In July 2020, the police performed a wellness check on father and learned that he was staying at the paternal grandfather's home "for a detox." On August 3, 2020, the police executed a search warrant at the paternal grandfather's house because of a report that pseudoephedrine had been purchased. Father was present during the search, and the police found him to be "very irate and clearly intoxicated." Father told the police that he "needed to drink more because he was going to start going through DTs – withdrawing from alcohol if he didn't have a drink." Three days later, the police arrested father on charges of strangulation and domestic assault.

After hearing the evidence and arguments, the circuit court terminated father's parental rights under Code § 16.1-283(B), (C)(1) and (C)(2). This appeal followed.

ANALYSIS

Father challenges the circuit court's order terminating his parental rights to S.H. "On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cnty. Dep't of Fam. Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cnty. Dep't of Hum. Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

Under Code § 16.1-283(C)(2), one of the bases for the circuit court's order terminating father's parental rights, a court is authorized to terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." Yafi, 69 Va. App. at 552 (quoting Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271 (2005)).

Father argues that he "was not given sufficient assistance in order for S.H. to return safely into his care." He claims that the Department "failed to adequately assist him with

completing services that were required." Father admitted that the Department provided him with phone numbers of providers but lamented that the Department "didn't hold [his] hand" throughout the process. The Department explained that it had offered to make referrals for father, but he indicated that he wanted to choose his own providers.

"'Reasonable and appropriate' efforts can only be judged with reference to the circumstances of a particular case. Thus, a court must determine what constitutes reasonable and appropriate efforts given the facts before the court." Harrison v. Tazewell Cnty. Dep't of Soc. Servs., 42 Va. App. 149, 163 (2004) (quoting Ferguson v. Stafford Cnty. Dep't of Soc. Servs., 14 Va. App. 333, 338 (1992)). The Department offered numerous services to father, including grief counseling. Father admitted that he did not complete all of the Department's required services, including the psychological and parenting capacity evaluations. Furthermore, father conceded that he had been depressed and abused alcohol as recently as the month before the circuit court hearing.

The circuit court reviewed all the required services and father's participation, or lack thereof, in those services. The circuit court found that father's grief "clearly [was] driving much of the problems," yet he had failed to participate in counseling. The circuit court further found that father "faithfully" participated in visitations "for a little while," before his addiction and depression prevented him from maintaining a stable relationship with his young son. The circuit court commented that "[w]hen dad doesn't show up [for visitations] because of his alcoholism or because of his depression or whatever it is, [S.H.] doesn't understand that." The circuit court rejected father's excuse that he was unable to complete the psychological and parenting capacity evaluations because of the COVID-19 pandemic. The circuit court found that father had more than two years to complete the evaluations. Nevertheless, the circuit court declined to find that father had been unwilling to remedy the conditions that led to S.H.'s placement and continuation

in foster care; rather, the circuit court found that father "ha[d] absolutely been unable to do it." The circuit court surmised that father's inability to substantially remedy the conditions was "probably because of his own depression and his own alcoholism and his own demons that he's fighting."

Father argues that he had "good cause" for making "slow" progress toward the completion of the Department's services, "given the grief that he was experiencing due to the loss of L.H." At the time of the circuit court hearing, S.H. was seven years old; the circuit court found that S.H. had been in foster care for "two years and four months of his life – a quarter of his life." The circuit court further found that "[c]hildren don't stand still," and father had "demonstrated in the last two years" that he was unable to move forward "and be the father that he needs to be." "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett v. Arlington Cnty. Dep't of Hum. Servs., 62 Va. App. 296, 322 (2013) (quoting Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540 (1990)). Considering the totality of the circumstances, the circuit court did not err in terminating father's parental rights under Code § 16.1-283(C)(2).

"When a lower court's judgment is made on alternative grounds, this Court need only determine whether any of the alternatives is sufficient to sustain the judgment." Castillo, 68 Va. App. at 574 n.9; see also Fields v. Dinwiddie Cnty. Dep't of Soc. Servs., 46 Va. App. 1, 8 (2005) (the Court affirmed termination of parental rights under one subsection of Code § 16.1-283 and did not need to address termination of parental rights pursuant to another subsection). We find that the circuit court did not err in terminating father's parental rights under Code § 16.1-283(C)(2); therefore, we do not need to reach the question of whether father's parental rights also should have been terminated under Code § 16.1-283(B) and (C)(1).

CONCLUSION

For the foregoing reasons, the circuit court's ruling is summarily affirmed.  Rule 5A:27.

Affirmed.